E-FILED
Thursday, 26 January, 2017  01:27:22 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TESHOME CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| The CITY OF CHAMPAIGN, SGT. TROY | ) |
| DANIELS, DEP. CHF. JOSEPH GALLO, | ) |
| DET. PATRICK KELLY, SGT. JIM | ) |
| REIN, DET. MARK STRZESAK, LT. | )  JURY TRIAL DEMANDED |
| SCOTT SWAN, and UNIDENTIFIED | ) |
| EMPLOYEES OF THE CHAMPAIGN | ) |
| POLICE DEPARTMENT | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## COMPLAINT

NOW COMES Plaintiff, TESHOME CAMPBELL, by and through his
attorneys, LOEVY & LOEVY, and complaining of SGT. TROY DANIELS, DEP.
CHF. JOSEPH GALLO, DET. PATRICK KELLY, SGT. JIM REIN, DET. MARK
STRZESAK, LT. SCOTT SWAN, and UNIDENTIFIED EMPLOYEES OF THE
CHAMPAIGN POLICE DEPARTMENT (collectively "Defendant Officers"), and
THE CITY OF CHAMPAIGN (hereinafter "City"), alleges as follows:

### Introduction

1.      Plaintiff, Teshome Campbell, was convicted of a murder that he did not
commit.

2.     Arrested in the prime of his life, Plaintiff spent 18 years in prison before he was ultimately exonerated. Because of his wrongful conviction, Plaintiff missed some of the most formative years of his life—ages 21 through 39.

3.     The murder at issue was a mob-style beating, which produced substantial blood. Many of the actual killers had the victim's blood and DNA on their clothing.

4.     The State collected forensic samples from Plaintiff.

5.     There was never a shred of physical evidence linking Plaintiff to the crime.

6.     The State's case against Plaintiff hinged on the testimony of three professed eyewitnesses.

7.     The testimony from each of these witnesses was false. That false testimony was fabricated by the Defendant Officers.

8.     The fabrication, and all of the facts and circumstances surrounding it, was concealed from Plaintiff, as was other exculpatory and impeachment evidence.

9.     Both the fabrication and the concealment were done pursuant to the policies and widespread practices of the Champaign Police Department.

10.     Some of the false evidence against Plaintiff was in the form of eyewitness testimony from two of the actual killers, Steven Peete and Damion Holt.

11.     The Defendants fabricated that testimony by promising Peete and Holt that they would not be prosecuted, so long as they testified against Plaintiff.

12.     Peete and Holt both went on to commit subsequent crimes.

13.     Peete went on to commit a subsequent murder.

14.     As a result of the fabricated false testimony and withheld evidence, Plaintiff was convicted of a crime he did not commit.

15.     Never giving up on proving his innocence, Plaintiff worked tirelessly to show that he had absolutely nothing to do with this crime.

16.     On December 30, 2015, this Court granted Plaintiff's petition for a writ of habeas corpus, giving the State 120 days to release or retry Plaintiff.

17.     Following this Court's December 30, 2015, Order, the State dismissed all charges against Plaintiff.

18.     Plaintiff petitioned for a certificate of innocence pursuant to 735 ILL. COMP. STAT. 5/2-702 *et seq.*

19.     On September 30, 2016, that petition was granted.

20.     Plaintiff now brings this action to obtain justice and to redress the injuries that Defendants caused him.

## Jurisdiction

21.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

22.     This Court has jurisdiction over Plaintiff's constitutional claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(v). The events giving rise to this complaint occurred in this judicial district.

## The Parties

23.     Teshome Campbell is 40 years old. He grew up in Champaign, Illinois, with his mother and brother.

24.     At all times relevant hereto, Defendants Daniels, Gallo, Kelly, Rein, Swan, Strzesak, and Unidentified Employees of the Champaign Police Department ("Defendant Officers") were police officers or otherwise employed by the Champaign Police Department.

25.     Each of the Defendant Officers is each sued in his or her individual capacity, and each acted under color of law and within the scope of his or her employment during the relevant events, including the investigation of the murder at issue.

26.     Defendant City of Champaign is an Illinois municipal corporation. The City of Champaign is or was the employer of each of the Defendant Officers.

## The Crime

27.     In the early morning hours of Christmas Day in 1997, James Shepard ("the victim") gave a friend, Rita Butler, $20 to buy him some cocaine.

28.     Butler was herself an addict, or recovering addict.

29.     Butler bought the drugs from someone near Bellefontaine and Clock Streets in Champaign, Illinois.

30.     After trying to use the substance Butler gave him, the victim came to believe it was not genuine cocaine.

31.     Butler and the victim returned to the area near Bellefontaine and Clock. Butler pointed out a person who she believed sold her the substance.

32.     The victim confronted the person that Butler identified, resulting in a loud, angry dispute. Several young men emerged from in and around nearby houses and began to beat up the victim.

33.     The beating was brutal. It was multiple young men on one side, and only the victim on the other.

34.     The victim shed a lot of blood—much of it ending up on his attackers.

35.     Eventually, the men scattered, leaving the victim in the street. The victim was taken to a hospital for treatment, but after several days he succumbed to his injuries and passed away.

### Plaintiff's Wrongful Prosecution and Conviction

36.     There was never any physical evidence implicating Plaintiff in the beating.

37.     The Defendant Officers investigated and interviewed numerous youth who lived or frequented the area around Bellefontaine and Clock Streets.

38.     The suspects and interviewees were young, impressionable, and scared.

39.     Plaintiff was one of the young men interviewed by the Defendant Officers. Plaintiff was interviewed on or about December 29, 1997.

40.     The Defendant Officers attempted to pressure Plaintiff into identifying the people who beat the victim.

5

41.     In particular, the Defendant Officers threatened Plaintiff that if he did not identify the killers, the Defendant Officers would see to it that Plaintiff himself was prosecuted for the murder.

42.     Plaintiff did not identify the participants.

43.     The Defendant Officers proceeded to fabricate evidence against Plaintiff.

44.     The Defendant Officers saw to it that Plaintiff was prosecuted.

45.     Plaintiff was not the only person who declined to identify the participants in the beating.

46.     When an interviewee resisted the Defendant Officers' pressure, and refused to identify the participants in the beating, the Defendant Officers fabricated evidence against that interviewee.

47.     When an interviewee resisted the Defendant Officers' pressure, and refused to identify the participants in the beating, the Defendant Officers saw to it that the interviewee was prosecuted.

48.     Eventually, numerous young men were charged in connection with the beating of the victim.

49.     At least three young men pleaded guilty to various charges related to the beating of the victim.

50.     None of the young men who pleaded guilty identified Plaintiff as being involved in beating the victim.

51.     Three of the young men who pleaded guilty to various charges related to the beating of the victim have sworn affidavits exculpating Plaintiff.

52.     In its case against Plaintiff, the State presented testimony from three purported eyewitnesses: Steven Peete, Damion Holt, and Rita Butler.

53.     Peete was coerced by the Defendant Officers to inculpate Plaintiff.

54.     Holt was coerced by the Defendant Officers to inculpate Plaintiff.

55.     Butler was coerced by the Defendant Officers to inculpate Plaintiff.

<u>Steven Peete</u>

56.     Steven Peete was a key eyewitness for the prosecution.

57.     One or more of the Defendant Officers learned at least as early as February 3, 1998, that Peete was one of the men who beat the victim to death.

58.     Specifically, on February 3, 1998, Leroy Hunter told police that he had witnessed the beating, and specifically that he saw Peete participate in the beating.

59.     Leroy (referred to by first name because there are other Hunters, referred to later) voluntarily contacted the police to be interviewed, because he had heard that the victim had died and he felt a moral obligation to turn Peete in.

60.     Leroy told the Defendant Officers that he saw Steven Peete strike the victim with a pipe or stick.

61.     Leroy was familiar with Peete because they lived across the street from each other.

62.     Leroy he had no doubt that it was Peete that he saw.

63.     One day after interviewing Leroy, the Defendant Officers arrested and interviewed Peete.

64.     The Defendant Officers encouraged Peete to tell a false story that inculpated Plaintiff.

65.     Peete identified several people who he said were involved in the beating, including Plaintiff.

66.     That identification was false.

67.     Peete told the Defendant Officers that he did not beat the victim.

68.     Peete's denial of his own involvement was false.

69.     In fact, Peete did participate in the beating of the victim.

70.     After interviewing Peete for the first time, the Defendant Officers received additional information that Peete lied in his interview.

71.     After interviewing Peete for the first time, the Defendant Officers received additional information that Peete was involved in beating the victim.

72.     Specifically, the Defendant Officers interviewed Minnie Hunter, Leroy's wife, who lived in the same house as Leroy.

73.     Minnie witnessed the beating and saw Peete beating the victim.

74.     Minnie was familiar with Peete because they lived across the street from each other.

75.     Minnie had no doubt that it was Peete she had seen.

76.     The Defendant Officers took action to prevent one or more witnesses from testifying and impeaching Peete.

77.     The Defendant Officers took action to prevent Peete's girlfriend, Trenetta Russell, from testifying.

78.     The Defendant Officers promised Peete immunity in exchange for his false testimony against Plaintiff.

79.     The promise of immunity was particularly enticing because Peete had an extensive criminal history, which could have exacerbated his sentence for the Shepard murder.

80.     The Defendant Officers never disclosed to the prosecutor or to Plaintiff the manner in which they coerced Peete.

81.     At Plaintiff's criminal trial, Peete falsely inculpated Plaintiff.

82.     Peete went on to commit one or more subsequent crimes, including murder.

83.     In 2007, Peete told the truth: that Plaintiff was in the general vicinity but did not participate in beating the victim.

84.     At that time, Peete swore that the police and Assistant State's Attorney Mick McAvoy pressured him to lie about Plaintiff's involvement.

<u>Damion Holt</u>

85.     Damion Holt (a.k.a. Damion Johnson) was another of the State's eyewitnesses.

86.     At the time of the beating, Holt was on conditional discharge and/or probation for earlier conviction(s).

87. Defendant Officers knew that Holt was one of the men who beat the victim to death.

88. Specifically, Defendant Officers had interviewed eyewitness Toni Leonard. Ms. Leonard was familiar with Holt because the two lived next door to each other and he used to visit her house.

89. Ms. Leonard told the Defendant Officers that she was positive that she saw Holt beat the victim.

90. The Defendant Officers interviewed Holt.

91. The Defendant Officers encouraged Holt to tell a false story that inculpated Plaintiff.

92. The Defendant Officers promised Holt immunity in exchange for his false testimony against Plaintiff.

93. The promise of immunity was particularly enticing because Holt had an extensive criminal history, which could have exacerbated his sentence for the Shepard murder.

94. The Defendant Officers promised that Holt's conditional discharge and/or probation would not be revoked, in exchange for his false testimony against Plaintiff.

95. The Defendant Officers never disclosed to the prosecutor or to Plaintiff the manner in which they coerced Holt.

96. At Plaintiff's criminal trial, Holt falsely inculpated Plaintiff.

97.     Holt went on to commit one or more subsequent crimes, including armed violence and residential burglary.

98.     Mr. Holt has since told the truth: that Plaintiff was not involved in the fatal beating.

<u>Rita Butler</u>

99.     The third of the State's eyewitnesses was Rita Butler.

100.    Butler agreed to buy cocaine for the victim, and she returned with him to the general area when he was unhappy with what he was given.

101.    The Defendant Officers coerced Ms. Butler into falsely identifying Plaintiff as one of the men who the victim first confronted about the fake cocaine.

102.    Ms. Butler was a cocaine addict who had multiple convictions for prostitution

103.    Ms. Butler admittedly engaged in a drug transaction in relation to the victim's death.

104.    Defendants procured Butler's false testimony by exploiting her fear of further prosecution.

105.    The Defendant Officers never disclosed to the prosecutor or to Plaintiff the manner in which they coerced Butler.

106.    In December 2014, Rita Butler told the truth: that Plaintiff was not involved in the fatal beating.

107.    On or about October 15, 1998, based on the Defendant Officers' fabricated evidence, the unlawfully coerced false testimony of witnesses, and the

withholding of exculpatory and impeachment evidence, Plaintiff was wrongfully

convicted of murder.

108.    Without the Defendant Officers' misconduct, Plaintiff never would

have been arrested, let alone tried and convicted.

109.    During his sentencing hearing, Plaintiff maintained his innocence,

stating "I know in my heart that I'm innocent" and that "the Lord knows I'm

innocent."

110.    Plaintiff was sentenced to 55 years in prison.

### Defendant Officers' Further Knowledge
### that Plaintiff was Innocent

111.    In addition to what has been described above, the Defendant Officers

had further knowledge that Plaintiff had nothing to do with the beating of the

victim.

112.    Numerous people were present at or near the scene when the beating

took place, including many people who witnessed the beating but took no part in it.

113.    Plaintiff was one such person.

114.    Other witnesses included Bobby Joe Douglas, Toni Leonard, Leroy

Hunter, and Ieca Hunter.

115.    Eyewitnesses gave statements to the Defendant Officers that

exculpated Plaintiff, but the Defendant Officers withheld those statements from the

prosecutors and from Plaintiff.

### Bobby Joe Douglas

116.    On the night of the beating, Mr. Douglas had driven with Plaintiff to the neighborhood around Bellefontaine and Clock.

117.    Mr. Douglas knew many of the people in the area, including at least one of the people who beat the victim.

118.    Mr. Douglas witnessed the beating up close.

119.    Indeed, he was so close that at one point he came into contact with the victim.

120.    When the beating broke out, Mr. Douglas specifically looked around for Plaintiff, because the two were supposed to leave together, but Mr. Douglas did not see Plaintiff present.

121.    Mr. Douglas left the immediate area and returned to his car, and only then did he see Plaintiff, and the two left together.

122.    Mr. Douglas was interviewed by the Defendant Officers about the Shepard beating.

123.    Mr. Douglas knew that Plaintiff was not involved in the beating.

124.    Mr. Douglas did not identify all of the people he saw beating the victim.

125.    The Defendant Officers fabricated evidence against Mr. Douglas.

126.    The Defendant Officers saw to it that Mr. Douglas was prosecuted.

127.    Mr. Douglas testified in his own defense and swore under oath to a jury that, to the best of his knowledge, Plaintiff was not involved in the beating.

128.    The jury acquitted Mr. Douglas.

<u>Toni Leonard</u>

129.    Toni Leonard witnessed Mr. Shepherd being knocked down and beaten. Ms. Leonard left the area when she heard sirens approaching.

130.    During the police investigation, Ms. Leonard identified *nine* people involved in the beating.

131.    Ms. Leonard did not identify Plaintiff as being involved in the beating.

132.    Ms. Leonard knew that Plaintiff was not involved in the beating.

<u>Leroy Hunter and Ieca Hunter</u>

133.    Leroy Hunter witnessed the beating from his home, and his daughter, Ieca Hunter, witnessed it from her home, which is right next door. Leroy and Ieca each called the police when they saw the beating.

134.    After Ieca called the police, she noticed a young man standing in front of her house, and away from the beating. That young man was Mr. Campbell, who Ms. Hunter was familiar with. She then went outside and spoke with Mr. Campbell because his presence made her feel comfortable and safe enough to go outside.

135.    During the beating, Ieca was engaged in conversation with Plaintiff, so she knew he was not a participant in the crime.

136.    Leroy also knew that Plaintiff was not involved, because he saw Ieca talking to Plaintiff while the beating was taking place.

137.    The Defendant Officers interviewed both Leroy and Ieca.

## The Trial of Bobby Joe Douglas

138.    Before the start of Plaintiff's criminal trial, the Defendant Officers received confirmation of what they already knew to be true—Mr. Peete and Mr. Holt were lying, and Mr. Douglas, Ms. Leonard, Mr. Hunter, and Ms. Hunter were telling the truth—and, accordingly, that Plaintiff was innocent.

139.    All of these witnesses testified in Mr. Douglas's trial for the same crime.

140.    Mr. Peete and Mr. Holt inculpated Mr. Douglas.

141.    Mr. Douglas, Ms. Leonard, Mr. Hunter, and Ms. Hunter exculpated Mr. Douglas.

142.    Mr. Douglas specifically stated that he and Plaintiff left the area together as the beating was taking place, and that to the best of his understanding, Plaintiff was not involved.

143.    The jury acquitted Mr. Douglas.

144.    Mr. Douglas also testified that when he was interviewed by the Defendant Officers, they threatened to have him convicted unless he gave names of people to prosecute for this crime.

## Plaintiff's Long-Overdue Exoneration

145.    On October 28, 2015, on Plaintiff's petition for a writ of habeas corpus, this Court held an evidentiary hearing that included testimony from eyewitnesses Toni Leonard and Leroy and Ieca Hunter.

146. During the hearing, each of these eyewitnesses' testimony contradicted the testimony that the State's coerced witnesses gave during Plaintiff's criminal trial.

147. Although the State had the opportunity to call witnesses, not one person testified that Plaintiff was involved in the victim's killing.

148. After that hearing, on December 30, 2015, this Court granted Plaintiff's habeas petition, giving the State 120 days to release or retry Plaintiff.

149. The State dismissed all charges in a manner indicative of Plaintiff's innocence.

### Champaign's Policies and Widespread Practices

150. The constitutional violations that caused Plaintiff's wrongful conviction were not isolated events. To the contrary, they were the result of the City of Champaign's policies and widespread practices of pursuing convictions without regard to the truth, through reliance on coerced statements and profoundly flawed investigations.

151. The constitutional violations that caused Plaintiff's wrongful conviction were also the result of the City's policies and widespread practices of failing to adequately train and supervise its police officers on their obligations not to withhold exculpatory or impeachment evidence, and not to fabricate evidence.

152. The constitutional violations that caused Plaintiff's wrongful conviction were also the result of the City's policies and widespread practices of failing to discipline officers who withhold exculpatory or impeachment evidence, or who fabricate evidence.

153.   The constitutional violations that caused Plaintiff's wrongful conviction were also the result of the City's policies and widespread practices of failing to intervene to prevent individual officers from violating citizens' constitutional rights.

154.   In accordance with these policies and widespread practices, Champaign police officers refused to report misconduct committed by their colleagues, including the misconduct at issue in this case.

155.   The City's failure to train, supervise, and discipline its officers effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against Plaintiff in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and policies, as alleged above.

156.   The City of Champaign and officials within the Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

157.   The constitutional violations that caused Plaintiff's wrongful conviction were also the result of the City's policies and widespread practices of violating citizens' constitutional rights in retaliation for citizens' non-compliance with the demands of police officers, regardless of whether those demands exceed the officers' authority.

158.  For example, the City settled a lawsuit with William Hawkins. When police officers arrived at Hawkins's home, he did not consent to their entry and did not agree to speak to them voluntarily. His lawsuit alleged that they retaliated against him by falsely arresting him, using excessive force, and maliciously prosecuting him for resisting arrest. The City paid $150,000, plus fees and costs, to settle Hawkins's lawsuit.

159.  As another example, Champaign police officers clashed with Patrick Thompson because he filmed their abusive interactions with civilians, as part of a documentary project. Thompson was charged with illegal eavesdropping, but those charges were dropped. Later, Thompson was wrongfully prosecuted for, and convicted of, a sexual assault, despite the existence of numerous people who had personal knowledge that ran contrary to the story told by the State's witness.

160.  The policies and practices described in the foregoing paragraphs were consciously approved by City of Champaign policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

**Plaintiff's Damages**

161.  Plaintiff spent over eighteen years in prison for a crime that he did not commit. Plaintiff must now attempt to make a life for himself outside of prison without the benefit of eighteen years of life experiences, which normally equips adults for that task.

162.  Additionally, the emotional pain and suffering caused by losing eighteen years in the prime of his life—from ages 21 to 39—has been substantial.

18

During his wrongful incarceration, Plaintiff was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share holidays, births, funerals and other life events with loved ones, meet his new nieces and nephews, and on the fundamental freedom to live one's life as an autonomous human being.

163. Plaintiff's eighteen years of wrongful incarceration forced him into a world of isolation in which he lost substantial contact with his friends and family in the outside world.

164. Despite his wrongful incarceration, Plaintiff completed his G.E.D. and received a certificate in Commercial Custodial Services. He has also worked toward his Associate's Degree in general studies. Plaintiff has also obtained work at a welding company. Shortly thereafter, he obtained a second job, as a forklift driver. Plaintiff also travels to speak about his experiences—to students, police cadets, and other groups—in an effort to prevent other innocent people from being wrongfully prosecuted and convicted.

165. As a result of the foregoing, Plaintiff has suffered tremendous damage, including physical sickness and injury, and emotional damages, all caused by the Defendants' misconduct.

## COUNT I – 42 U.S.C. § 1983
## Due Process

166.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

167.    As described in detail above, the Defendant Officers, while acting individually, jointly, and each in conspiracy with one or more other persons, deprived Plaintiff of his constitutional right to a fair trial by withholding and suppressing exculpatory and impeachment evidence and by fabricating evidence against Plaintiff.

168.    In the manner described more fully above, the Defendant Officers deliberately withheld exculpatory and impeachment evidence from Plaintiff and from the prosecution, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

169.    In addition, in the manner described more fully above, the Defendant Officers knowingly fabricated and solicited false evidence implicating Plaintiff the crime, and pursued and obtained Plaintiff's conviction using that false evidence.

170.    The Defendant Officers' misconduct denied Plaintiff his constitutional right to a fair trial and resulted directly in his unjust criminal conviction. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

171.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

172.   As a result of the Defendant Officers' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

173.   The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Champaign Police Department in the manner described more fully above. In this way, the City of Champaign also violated Plaintiff's rights through the actions of its agents by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.

**COUNT II – 42 U.S.C. § 1983**
**Conspiracy to Deprive of Constitutional Rights**

174.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

175.   Each of the Defendant Officers, acting in concert with one or more co-conspirators, reached an agreement to deprive Plaintiff of his constitutional rights, all as described in the various paragraphs of this Complaint.

176.   In so doing, these co-conspirators conspired to accomplish an unlawful purpose, or to accomplish a lawful purpose by an unlawful means.

177.   In furtherance of their conspiracy, one or more of the co-conspirators committed an overt act, and each was a willful participant in joint activity.

178.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

179.    As a result of the Defendant Officers' misconduct described in this Count, Plaintiff suffered loss of liberty and injury, including physical and emotional harm.

180.    The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Champaign Police Department in the manner described more fully above. In this way, the City of Champaign also violated Plaintiff's rights through the actions of its agents by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.

## COUNT III – 42 U.S.C. § 1983
## Malicious Prosecution[1]

181.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

182.    In the manner described more fully above, the Defendant Officers, individually, jointly, and each in conspiracy with one or more persons, known and unknown, and all pursuant to City policies and widespread practices, deprived Plaintiff of his constitutional rights.

183.    The Defendant Officers accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so, in violation of his rights secured

---

[1] Plaintiff recognizes that the decision in *Manuel v. City of Joiliet* has rejected § 1983 malicious prosecution claims. 590 Fed. Appx. 641 (7th Cir. 2015), *cert. granted* Jan. 15, 2016. However, this Count is included so Plaintiff may preserve it as the appeal is currently pending before the Supreme Court of the United States.

by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment.

184.    In so doing, the Defendant Officers caused Plaintiff to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of his innocence.

185.    The Defendant Officers subjected Plaintiff to unauthorized and arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent, through the Defendant Officers' fabrication, suppression, and withholding of evidence.

186.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

187.    As a result of the misconduct of the Defendant Officers described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

188.    The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Champaign Police Department in the manner described more fully above. In this way, the City of Champaign also violated

Plaintiff's rights through the actions of its agents by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.

## COUNT IV – 42 U.S.C. § 1983
## Failure to Intervene

189.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

190.   During the constitutional violations described herein, one or more of the Defendant Officers stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

191.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

192.   The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant City of Champaign, as described above, such that Defendant City of Champaign is also liable.

193.   As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff suffered injury, including physical and emotional harm.

## COUNT V – State Law
## Intentional Infliction of Emotional Distress

194.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

195.   In the manner described more fully above, by fabricating false evidence against him, and by withholding exculpatory and impeaching evidence from him, the Defendant Officers engaged in extreme and outrageous conduct.

196.   Defendant Officers' actions set forth above were rooted in an abuse of power or authority.

197.   Defendant Officers' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

198.   The Defendant Officers' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

199.   The Defendant Officers' misconduct described in this Count was undertaken within the scope of their employment such that their employer, the Champaign Police Department, is liable for their actions.

200.   As a direct and proximate result of the misconduct described in this Count, Plaintiff suffered injuries, including severe emotional distress and ongoing pain.

## COUNT VI – State Law
## Malicious Prosecution

201.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

202.    In the manner described more fully above, the Defendant Officers, individually, jointly, and each in conspiracy with one or more persons, known and unknown, and all pursuant to City policies and widespread practices, deprived Plaintiff of his constitutional rights. These acts violated Plaintiff's rights under Illinois law.

203.    In so doing, the Defendants caused Plaintiff to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of his innocence.

204.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

205.    As a result of the misconduct of the Defendant Officers described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

206.    The Defendant Officers' misconduct described in this Count was undertaken within the scope of their employment such that their employer, the Champaign Police Department, is liable for their actions.

## COUNT VII – State Law
## Civil Conspiracy

207.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

208.    As described more fully in the preceding paragraphs, each of the Defendant Officers reached an agreement, with one or more other people, known and unknown, to deprive Plaintiff of his constitutional rights, to prosecute Plaintiff maliciously, and to cause Plaintiff to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause.

209.    The Defendant Officers' actions described in this Count were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights. In furtherance of the conspiracy, one or more of the co-conspirators committed an overt act, and each was a willful participant in joint activity.

210.    As a result of the Defendant Officers' misconduct described in this Count, Plaintiff suffered injury, including physical and emotional harm.

## COUNT VIII – State Law
### *Respondeat Superior*

211.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

212.    In committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the City acting at all relevant times within the scope of their employment.

213.    Defendant City of Champaign is liable as principal for all torts committed by its agents.

## COUNT IX – State Law
### Indemnification

214.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

215.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

216.    Defendant Officers are or were employees of the City, who acted within the scope of their employment in committing the misconduct described above.

217.    The City is obligated to pay any judgment entered against employees of the City in an official capacity.

WHEREFORE, Plaintiff TESHOME CAMPBELL, respectfully requests that this Court enter a judgment in his favor and against Defendants CITY OF CHAMPAIGN, SGT. TROY DANIELS, DEP. CHF. JOSEPH GALLO, DET. PATRICK KELLY, SGT. JIM REIN, DET. MARK STRZESAK, LT. SCOTT SWAN,

and UNIDENTIFIED EMPLOYEES OF THE CHAMPAIGN POLICE DEPARTMENT, awarding compensatory damages and attorneys' fees and costs against each Defendant, punitive damages against each of the Defendant Officers, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, Teshome Campbell, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**TESHOME CAMPBELL**

BY:  /s/      Jon Loevy
*One of Plaintiff's Attorneys*

Jon Loevy
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900